## SUPREME COURT.

LYMAN SADDLESVENE, appellant agt. JAMES D. ARMS, respondent.

The Code does not authorize an *attachment* in an action for a *tort.*
It was not intended by sections 227 and 229, to extend the remedy by attachment to cases other than those specified in the Revised Statutes. (*All the reported cases on this question under the Code, examined.*)

*Erie General Term, November,* 1866.

GROVER, *P. J.,* DANIELS, MARVIN *and* DAVIS, *Justices.*

APPEAL by plaintiff from order denying motion for a new trial. The action is to recover possession of a horse. The plaintiff gave evidence tending to prove title to the horse in himself and that the defendant took the horse from his possession.

The defense was that the defendant was sheriff of Niagara county, and took the horse by virtue of an attachment against one James Kenedy, in favor of one Hannah Covert, in an action for *assault and battery.*

The plaintiff objected that such attachment was unauthorized. The court overruled the objection, and the plaintiff excepted.

The defendant gave evidence tending to prove that the sale of the horse by Kenedy to the plaintiff was fraudulent and void as to Hannah Covert.

The defendant had a verdict.

FARRELL & BRAZEE, *for defendant.*
MURRAY & GREEN, *for plaintiff.*

*By the court,* MARVIN, J. Is an attachment authorized in an action for assault and battery? In *Hernstein* agt. *Matthewson* (5 *How. Pr. R.* 196), decided in 1856, EDMONDS, J., decided that the Code allowed an attachment to issue against a non-resident defendant in every action, whether for a wrong or on contract.

In *Ward* agt. *Begg* (18 *Barb. R.* 139), the action was on

contract, and the amount the plaintiff was entitled to receive was certain. MITCHELL, J., in his opinion, remarked : " It is not necessary under the Code, that the plaintiff should have a cause of action for the payment of money merely, to have an attachment;" it is enough that " a cause of action exists against the defendant, and that the amount of the claim and the grounds thereof are stated," citing Code, section 229. This was a general term decision in 1854.

In *Floyd* agt. *Blake* (19 *How. Pr. R.* 542), decided at September special term, in 1860, the action was for assault and battery, Justice JAMES upheld an attachment, as a provisioal remedy. He discussed the question fully, referring to sections 227 and 229 of the Code. The above are the cases cited by the defendant's counsel.

The plaintiff's counsel cited the following cases : *Gordon* agt. *Gaffey* (11 *Abb. p.* 1). The action was for damages arising from the burning of the plaintiff's barn and its contents. HOGEBOOM, J., at March special term, 1859, decided that the attachment was unauthorized, and set it aside. He held that section 227 of the Code refers to cases where a sum of money is specified in the summons, as the sum for which the plaintiff will take judgment if the defendant fails to answer the complaint. It will be seen that this decision was more than a year earlier than that of *Floyd* agt. *Blake*, though it is not probable that Justice JAMES was aware of it.

*Shaffer* agt. *Mason* (29 *How.* 55), was decided at the New York February general term, 1865, by INGRAHAM, SUTHERLAND and CLERKE, Justices. The arguments of counsel were elaborate, and the opinion of the court is by SUTHERLAND, J., who takes notice of the prior decisions. The action was trespass for taking and carrying away personal property. It was held that no attachment could issue in such a case, nor in any action of tort independent of contract.

· *Ackroyd* agt. *Ackroyd* (20 *How. Pr. R.* 93), is a special term decision by LEONARD, J,, in 1860. The action was by one partner against another for an account, claiming a large amount due. It was held that no attachment could be issued in the case.

The weight of authority is decidedly adverse to an attach-
ment in a case like the present. The language of the Code
(§§ 227, 229), is now, " in an action for the recovery of the
money against," &c., the plaintiff may have the property of
the defendant attached. " The warrant may be issued when-
ever it shall appear by affidavit that a cause of action exists
against such defendant, specifying the amount of the claim,
and the grounds thereof," &c. This language, as has been
said, is quite broad.

It will be noticed by consulting the Code of 1848, that it
contains no provisions touching attachment. The law was
left in the state it then was. The remedy by attachment, is
first found in the Code of 1849. The system is unfolded in
sections 227 to 243, inclusive. The Revised Statutes con-
tain a system of proceedings in favor of *creditors* against *debt-
ors*, by which the property of the *debtor* may be attached for
the *payment* of his debts, under certain circumstances. (*See
part 2, ch. 5, title 1, art. 1 and 2.*).

The attachment may issue upon " a demand against such
debtor personally, whether liquidated or not, arising upon
contract, or upon a judgment or decree rendered within this
state " (2 *R. S.* 3, § 3). The language is the same in the
act relating to a justice's court (2 *R. S.* 230, § 27). Thus
the remedy by attachment of property, was confined to a
demand against a debtor arising upon contract, or judgment
or decree. It was not necessary that the demand should be
liquidated. But the application for the attachment is to spe-
cify the sum in which the debtor is indebted, over and above
all discounts. (2 *R. S.* 3, § 4; *Id.* 23, § 28.)

Is it reasonable to suppose that the legislature of 1849
intended to depart so widely from the system theretofore
existing, as to include all actions whatever, in which the
plaintiff might recover a verdict in dollars and cents ? I do
not think it is, and although the language in section 229 is
broad and general, I think the Code as a system, furnishes
some evidence that such was not the intention. It is to be
assumed that the legislature in enacting these provisions in
1849, understood the provisions of the Code then in force,

enacted the year before. All the previous forms of pleading were abolished (§ 118, *now* 140), but the leading distinction between actions on contract and for a tort were not abolished (§§ 167, 286) ; the kinds of execution, &c.

The action is to be commenced by the service of a summons. It is to contain a notice in actions arising upon contract, for the recovery of money only, that the plaintiff will take judgment for a sum specified therein, &c. In other actions the notice is, that if the defendant shall fail to answer the complaint, the plaintiff will apply to the court for the relief demanded in the complaint (§ 129). This section has given rise to a great conflict of decisions. At one time it was supposed that the form of the notice was to be controlled by the fact whether the action arose on contract, or for a tort. But in subsequent cases, great stress has been placed upon the words " for the recovery of money only," and " that he will take judgment for a sum specified therein." See *Tuttle* agt. *Smith* (14 *How.* 395), in which the question as to the form of the notice is elaborately discussed by EMOTT, J. He came to the conclusion that the phrase " for the recovery of money only," must be construed to mean the recovery of a definite sum of money as such, and without calling upon the court to ascertain or adjudge anything but the existence and terms of the contract by which it is due. He refers as favoring this construction, to section 246, touching judgment when the defendant fails to answer the complaint. By this section, numerous cases arising on contract, require that application be made to the court.

I am inclined to agree with Judge EMOTT in the construction he gives to section 129, touching the notice which the summons is to contain. After noticing the fact that prior to 1857, the language in section 227 of the Code was, " in an action for the recovery of money," and that by the amendment that year the article " the " was inserted before "money." Justice SUTHERLAND, in *Shaffer* agt. *Mason* (*supra*), intimated that " the money," must now mean the money demanded in the summons in the action. If the learned judge intended to adopt the construction of section 129, as

given in *Tuttle* agt. *Smith* (*supra*), I apprehend that the remedy by attachment in an action under the Code, would be more restricted than it is by the Revised Statutes, against the property of absconding, &c., debtors.  It would exclude a class of cases arising on contract, when the damages are not liquidated, though the creditor may be able to "specify the sum in which the debtor is indebted, over and above all discounts," as required by the Revised Statutes.

Though I am not willing thus to restrict this section, yet I think the amendment inserting "the" before "money," was made with a view of making it more clear that the remedy by attachment was confined to actions arising upon contract, and in which the plaintiff could state the sum due him. In short, that the amendment had some reference to section 129, without, however, intending to sanction the construction of this section, touching the form of the notice, given to it in *Tuttle* agt. *Smith*.  I am entirely satisfied that it was not intended by sections 227 and 229, to extend the remedy by attachment to cases other than those specified in the Revised Statutes.

I think this position will be strengthened by a careful examination of the provisions contained in this chapter of the Code.  "The amount of the claim and the grounds thereof," are to be specified.  It is to appear by the affidavit that the defendant is a foreign corporation, or not a resident of this state, or has departed therefrom with intent to defraud his creditors, &c.

By section 231, the sheriff is to attach property sufficient to satisfy the plaintiff's demand, the amount of which must be stated in conformity with the complaint.

Sections 240 and 241, provide for the discharge of the attachment upon the application of the defendant.  He is to give an undertaking, executed by at least two sureties, to the effect that the sureties will pay the amount of the judgment that may be recovered in the action, not exceeding the sum specified in the undertaking, which shall be at least double the amount claimed by the plaintiff in his complaint. If upon appraisal, the property attached be less than the

Saddlesvene agt. Arms.

amount claimed, then the undertaking is to be double the amount of the appraisal.

Now take an action for slander, or assault and battery, the amount of the recovery demanded being $10,000, $20,000, or $50,000, when it is not probable that the recovery will ever exceed $500. Indeed, the assault and battery, or the slander, may be of the most trifling character, and the action may end in a verdict for nominal damages. Is the Code open to the objection that under such circumstances a plaintiff may estimate his own damages, and then attach the property of the defendant sufficient to satisfy such damages, and retain the property until the defendant shall give two sureties in double the amount claimed in the complaint? The sureties are to be approved by the court or officer. It is not a satisfactory answer, to say that there can be no danger of such practice, because the plaintiff is by affidavit, to specify "the amount of the claim, and the grounds thereof." It is true, he is to specify the amount of the claim, and the grounds of it, but in most actions of tort the damages are uncertain and entirely unknown, until the verdict of the jury is rendered, and the plaintiff may fix them at any sum, without the fear of conviction for perjury. This will not be so, if the action is for the breach of a contract, for then the facts constituting the contract, and the breach, must be stated as the " grounds " of the claim, and " the *amount* of the *claim* " must be stated. Here are sundry facts to be stated, and if they are not truly stated, the person making the affidavit may be convicted of perjury.

The truth, in my opinion is, that the author of the language in sections 227 and 229, never contemplated an attachment in an action for a tort. The word "*claim*" is used as equivalent to *debt* or *demand,* which the defendant was bound by his contract to pay or discharge. The word "demand,", is used in the Revised Statutes (*Vol.* 2, *p.* 3, § 3). Demand or claim, is properly used in reference to the *cause* of action. A claim is a demand of a right or supposed right; a challenging one another for something due or supposed to be due, as a claim of wages for ser-

vices (*Web. Dict*). *Bouviêr*· says : "A claim is a challenge of the ownership of a thing which a man has not in possession, and is wrongfully withheld by another. The word *claim* can have no application to an action for assault and battery, or for libel or slander. It might be applicable in an action to recover the possession of personal property. The Code requires that the *amount* of the claim should be specified. It must be something, then, the *amount* of which in dollars and cents, can be specified. It is a demand of a ·right or thing withheld, the amount of which can be stated in money. It has no reference, as used in the Code, to *damages*, though it may be in many actions on contract, that the "claim" and the *damages* may be the same in amount. Damages are the indemnity given for breaches of contract, or for tortious acts. The Code speaks of damages as something entirely distinct from the cause of action (§§ 276, 277, 154, 261, 263, 386, 387). Turn to section 142 of the Code ; the complaint is to contain (*sub.* 2) a statement of the facts constituting a cause of action ; also (3) a demand of the relief to which the plaintiff supposes himself entitled. If the recovery of money be demanded, the amount thereof shall be stated. Here is a clear distinction between the cause of action and the relief demanded.

In stating the facts constituting the *cause of action* for assault and battery, nothing is said of amounts of money, but the relief demanded is money, and the amount is stated. In short, the Code throughout distinguishes between the cause of action and the relief to be demanded ; and when in sections 227 and 229, it authorizes an attachment "in an action for the recovery of the money," when "it shall appear by affidavit that a cause of action exists against such defendant, specifying the *amount* of the *claim*, and the grounds thereof ;" this remedy is confined to actions upon contract, in which the *amount* to which the plaintiff is entitled can be specified ; and it is a wide departure from the fair construction of the language here used, and from the theory and science of the Code, to refer the word *claim*, to

the relief demanded in the complaint, and the word *amount*, to the sum of money demanded as damages.

The order denying a new trial should be reversed, and there must be a new trial, costs to abide event.