# Central Railroad & Banking Co. *v.* Ingram.

*Action for Damages for Injuries to Mules.*

1. *Liability of railroad company for injuries to stock; general charge on evidence*—In an action against a railroad company to recover damages for injuries to several mules, which were run over by a freight train before daybreak one frosty morning, as the train was crossing a trestle over a small creek, the defendant is entitled to the general affirmative charge on the evidence, when the engineer of the train testifies that

[Central Railroad & Banking Co. v. Ingram.]

he did not see the animals until he was within ten feet of them, and could not see them sooner because of a dense fog, about one hundred yards wide, which covered the track at that point, extending up and down the creek; there being no evidence in conflict with his testimony, and none which authorized an inference inconsistent with it.

APPEAL from the Circuit Court of Russell.

Tried before the Hon. JESSE M. CARMICHAEL.

This action was brought by Charles E. Ingram against the appellant corporation, to recover damages for injuries to a number of his mules, fourteen of which were killed, and several others crippled and injured, by one of the defendant's freight trains, on the morning of November 28th, 1890. The accident occurred between three and four o'clock in the morning, an hour or more before daybreak, at a trestle or short bridge which spanned Dry Creek; and the evidence showed that the night was star-lit, and the morning frosty. The defendant asked the general affirmative charge on the evidence, and the refusal of this charge is assigned as error.

NORMAN & SON, for appellant, cited *Long v. McDougald,* 23 Ala. 413; *Belisle v. Clarke,* 49 Ala. 98; *Hall v. Posey,* 79 Ala. 89; *Ala. Gold L. Ins. Co. v. Mobile L. Ins. Co.,* 81 Ala. 331; 87 Ala. 309.

JOHN V. SMITH, *contra,* cited *Railroad Co. v. Jones,* 71 Ala. 495; *Railroad Co. v. Perry,* 87 Ala. 392; *Railroad Co. v. Smith,* 90 Ala. 25.

McCLELLAN, J.—The general affirmative charge was asked by the defendant below and refused. The only exception reserved goes to that action of the trial court. The correctness of the ruling confessedly depends upon whether any evidence was adduced in conflict with, or which afforded an inference inconsistent with, the testimony of the engineer, that the immediate locality of the casualty was so enveloped in a dense wall of fog as that it was impossible to see plaintiff's mules until too near them to avoid colliding with and killing them. This fog-wall, he says, arose from the bed of a creek along which was timber, was scarce an hundred feet thick, and extended across the track. This testimony is not, we apprehend, unreasonable in itself; but, if so, the jury would have been free to disregard it, under the charge requested and refused. So, too, with respect to supposed contradictions in other parts of this witness' testimony; the giving of the charge asked would not have

prevented the jury, had they seen proper, from discrediting the witness as to the existence of fog, and finding for the plaintiff, since the instruction was that they should find for defendant only in the event they believed all the evidence. The sole question, we repeat, therefore is, was there any evidence inconsistent with the testimony of the engineer as to the existence of the fog at the time and place of the casualty? Certainly neither the fact that the night was clear and star-lit—the accident occurred a little after 3 o'clock A. M.—or that the dawn was fair and bright, is at all inconsistent with the theory of the existence of a fog-wall at that particular point; for it is common knowledge, that fogs of this character, arising from water-courses, usually, if indeed not always, occur only during very clear nights. Nor do we conceive that the testimony of the witness Smith affords any basis for an inference to be drawn by the jury that the engineer was mistaken as to the fog. Smith was three-fourths of a mile away. It was night. It does not appear that his attention was at all directed to the point of the alleged fog. If it had been, it is not reasonable to suppose that he would at that distance, and at that time, have detected the wall of fog hanging over the bed of the creek, and among the trees which lined its banks. It is common knowledge that such fogs, "after depositing a heavy dew, lie still in the valleys," over the water and damp ground from which they are exhaled; and it would have been singular, under the conditions shown by the evidence, if there had been any traces of fog at the place where Smith was. The evidence does not inform us how many creeks, swamps and the like this train had passed over on that night; but the engineer testified he had passed through a similar fog at Uchee Creek; and for aught that we can know, this was the only other point on the line traversed by the train which afforded the same aqueous and atmospheric conditions that existed at the point of the accident. So that we are unable to conceive how the fact that fog existed elsewhere only at Uchee Creek, could afford any inference that it did not exist at the place in question.

Another matter relied on to sustain the court's action is the testimony of the fireman. This witness testified as to the fog only this: "I can not say there was any fog that night." This could mean no more than that the witness did not know at the time of the trial whether there was a fog at the time and place inquired about. How this ignorance arose, why he is unable to say that there was a fog, he does not undertake to inform the jury, as we construe his testi-

[Central Railroad & Banking Co. v. Ingram.]

mony. It may be that his attention was not on the alert, and hence he did not know at the time whether there was a fog. Or it may be that he knew at the time that there was or that there was not such fog as the engineer deposed to, and has since forgotten what was the real fact in that connection. However that may be, one thing is certain: he neither affirms or denies the existence of the fog, directly or inferentially; and his evidence can not in any just sense be said to corroborate or contradict that of the engineer, or to afford any basis for a legitimate inference in line with or inconsistent with the latter's testimony. Manifestly, the jury might have given full credence to every fact deposed to by the fireman, and full force to every inference deducible from his evidence, and yet have implicitly believed all that was deposed to by the engineer in respect of the existence of a dense fog at the place of the casualty. So far as the testimony of the fireman is concerned, therefore, the general charge requested should have been given.

There is no evidence in this record that any of the mules were stricken elsewhere than at the point which the engineer swears was enveloped in the fog. No indications of a collision at any other point are deposed to. All the animals which were killed outright, were found at that place. Several hours afterwards, one of the mules which had been wounded in the collision was found on the track at another place a short distance from this, in the direction from which the train came. That it had gone to that place after the train passed, is manifest from the fact that it was found on the track, where it could not have remained and lived while the train was passing; and that it might have come from the place where the other mules were killed is demonstrated by the fact that it was still able to move about and was driven off the road. In the absence of any evidence of a collision at the point where this mule was found, it would be unreasonable to allow any inference under the circumstances to be drawn that it was stricken at that place. This fact, like the other circumstances to which we have alluded —and this and those others constitute all the evidence relied on to afford an inference inconsistent with the evidence of the engineer—affords nothing contradictory of, or inconsistent with the evidence for the defendant, which went to show that its employes were without fault in respect of the occurrence; and the jury should have been instructed, as requested, that if they believed all the evidence in the case they should find for the defendant.

Reversed and remanded.